IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SAMUEL BAHREINI,

     Plaintiff,

  v.

PAUL ZSEBEDICS, *et al.,*

     Defendants.

Civil Action No. 8:23-cv-1357-PX

\* \* \*

## MEMORANDUM OPINION

This case arises out of a contentious criminal prosecution against Plaintiff Samuel Bahreini.  Bahreini now sues two sets of defendants for a host of claims stemming from their participation in the criminal matter.  ECF No. 1.  The first are Bahreini's former business partners, Paul Zsebedics and Al Sivick, who testified against him in the underlying criminal trial. *Id.*  The second are the prosecutors from the Montgomery County State's Attorney's Office, Hannah Gleason and Bryan Roslund, along with the assigned investigator, Julie Neal, and the State's Attorney's Office itself (collectively "State Defendants"). *Id.*  Each group of Defendants have separately moved to dismiss the claims against them.  ECF Nos. 15, 16 & 19.[1]  Bahreini moves for leave to file an amended complaint, not to cure any of the alleged deficiencies in the original Complaint, but to add an abuse of process claim against Zsebedics and Sivick.  ECF No. 23.  The motions have been fully briefed, and no hearing is necessary. *See* Loc. R. 105.6.  For

---

[1]  Sivick and Zsebedics also move to strike an attachment to Bahreini's response, namely, an email exchange which is neither integral to, nor incorporated into, the Complaint.  ECF Nos. 20-2 & 22; *see Fisher v. Maryland Dept. of Public Safety and Correctional Servs.*, No. JFM-10-0206, 2010 WL 2732334, at *2–4 (D. Md. July 8, 2010).  Accordingly, the motion to strike is granted.  However, even if the Court considered the email, it would not change the outcome of the motions.

the following reasons, the Court denies Bahreini's motion for leave to amend and grants Defendants' motions to dismiss.

## I.    Background

For purposes of the Defendants' motions to dismiss, the Court views the Complaint facts as true and most favorably to Bahreini as the non-movant.  Bahreini is a brown man of middle eastern and Persian descent.  ECF No. 1 ¶ 24(5).  He has worked in the wireless cell phone industry for decades.  *Id.* ¶ 13.  On May 14, 2010, Zsebedics and Sivick, two white men, joined Bahreini to form MobileRev, LLC ("MobileRev").  *Id.* ¶¶ 16, 24(2).  MobileRev principally operated as an independent cell phone dealer.  *Id.* ¶ 16.  Bahreini contributed to the corporation his acumen in the industry while Zsebedics and Sivick supplied the capital and years of experience as businessmen.  *Id.*

At the time the men formed MobileRev, Bahreini was still bound by a three-year non-compete agreement with his prior employer.  *Id.* ¶ 17.  The terms of this agreement prevented him from acquiring any partnership interest in MobileRev.  *Id.*  The parties, however, treated Bahreini as holding a one-third partnership in the venture.  *Id.*

In January 2011, MobileRev opened its first store.  *Id.* ¶ 18.  A year later, Bahreini and Zsebedics formed another company, VoloForce, LLC ("VoloForce").  *Id.* ¶ 20.  The purpose of VoloForce was to "market, sell, and maintain" a virtual program Bahreini had developed.  *Id.* Zsebedics and Bahreini's wife each maintained a 50% ownership interest in VoloForce.  *Id.*

On December 31, 2016, Bahreini helped sell MobileRev for $2.3 million.  *Id.* ¶ 18. Bahreini expected to receive one third of the sales proceeds, but Zsebedics and Sivick refused to pay him anything.  *Id.*  Beginning in 2017, Zsebedics and Sivick also attempted to obtain total control over VoloForce.  *Id.* ¶ 21.  At some point, Zsebedics moved VoloForce headquarters to

2

Florida.  *Id.*  When all efforts to resolve their differences regarding the sale of the company failed, Bahreini initiated a civil suit in Florida state court on January 26, 2018, against Zsebedics and Sivick.  *Id.*

Around the same time, the State's Attorney's Office commenced a criminal investigation against Bahreini.  *Id. ¶* 22.  The Complaint obliquely refers to the investigation as related to the civil suit and the faltering business relationship, but never explains the substance of the criminal charges.  *See id.* ¶¶ 22, 23, 24(2).  The Complaint, however, does allege that Zsebedics and Sivick had threatened MobileRev employees to induce them to cooperate in the investigation or face criminal prosecution themselves, and that four of the 250 employees assisted in the criminal matter.  *Id.* ¶¶ 24(2), 24(3).  The Complaint avers generally that the employees helped "paint a deceptive picture" as to Bahreini's alleged misconduct.  *Id.* ¶ 24(2).  Thereafter, on July 27, 2018, the State's Attorney's Office informed Bahreini and his wife that they, along with MobileRev and VoloForce, were targets of a criminal investigation.  *Id. ¶* 23.

On October 14, 2020, Bahreini was charged through a criminal information for engaging in a theft scheme over $100,000, conspiracy to commit a theft scheme over $100,000, embezzlement, and willful filing of a false 2016 tax return.  *Id.* ¶ 24(1).  Specifically, Bahreini was accused of stealing approximately $593,000 from MobileRev.  *Id.*  Bahreini vigorously disputed the charges and set out to "prove his innocence" to the State's Attorney's Office.  *Id.* ¶ 24(11).  First, he spoke with Detective Neal, turning over emails and other documentary evidence which showed that Bahreini "worked harder than anyone else" at MobileRev, and had run the day-to-day operations of the company.  *Id.*

Neal did not credit Bahreini's information.  *Id.*  ¶ 24(11).  Rather, avers Bahreini, the State Defendants went forward with the criminal case on very little documentary evidence.  *Id.*

3

Neal reviewed only six MobileRev credit card receipts out of thousands "so as to intentionally get to her conclusion that Bahreini was guilty of felony theft." *Id.* ¶ 24(3).  Bahreini also alleges non-specific grievances aimed at the perceived unfairness of his prosecution, to include the State's Attorney's Office's supposed violation of its own practice to defer any criminal prosecution until related civil proceedings have concluded. *Id.* ¶¶ 24(3), 24(4).  Bahreini asserts that the investigation and prosecution amounted to "race-based selective prosecution." *Id.* ¶¶ 24, 28, 31, 35, 41.

The criminal trial commenced on August 22, 2022. *See* Maryland Judiciary Case Search, https://casesearch.courts.state.md.us/casesearch/inquirySearch.jis (last visited Feb. 12, 2022). Zsebedics and Sivick testified.  ECF No. 1 ¶ 27.  Each asserted that Bahreini could "pay himself what he wanted." *Id.*  Trial lasted five days, after which the jury acquitted Bahreini of the theft charges. *Id.* ¶ 26.[2]

On May 22, 2023, Bahreini filed suit in this Court arising from his perceived mistreatment in the state criminal matter.  ECF No. 1.  The Complaint alleges that State Defendants Neal, Gleason, and Roslund maliciously prosecuted him on account of his race (Count I); and that they, along with the State's Attorney's Office, violated his rights under the Fifth Amendment to the United States Constitution and Article 22 of the Maryland Constitution (Count II). *Id.* ¶¶ 25–31.  Bahreini also collectively alleges common law defamation claims of libel, slander, and false light against Zsebedics and Sivick and the State Defendants (Count III & IV). *Id.* ¶¶ 32–39.  Last, all Defendants are sued for gross negligence (Count V). *Id.* ¶¶ 40–42.

---

[2] Bahreini did plead guilty to a misdemeanor tax charge on November 28, 2022**.** *See* Maryland Judiciary Case Search, https://casesearch.courts.state.md.us/casesearch/inquirySearch.jis (last visited Feb. 12, 2022); ECF No. 24-1 at 3–4; ECF No. 21 at 6.

Defendants now move to dismiss the Complaint.  ECF Nos. 15, 16 & 19.  The State Defendants principally assert that they are immune from suit and, alternatively, that the claims fail on sufficiency grounds.  ECF No. 19.  Zsebedics and Sivick argue that the defamation claims cannot proceed for their statements as witnesses and are otherwise time barred.  ECF Nos. 15 & 16.  Bahreini moves to amend the Complaint to add a claim against Zsebedics and Sivick.  ECF No. 23.  As more fully explained below, Defendants' motions to dismiss are granted and Bahreini's motion to amend is denied as futile.

The Court turns first to Defendants' dismissal motions.

## II.     Motions to Dismiss

Motions to dismiss pursuant to Federal Rule to Civil Procedure 12(b)(6) "test[] the sufficiency of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). The Court "accept[s] the factual allegations in the complaint as true and construe[s] them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).  However, the "Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).  Nor can courts "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Iqbal*, 556 U.S. at 663 (". . . the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").  To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court must be able to deduce "more than the mere possibility of misconduct" and the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *Ruffin v.*

*Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at

679), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016).

### A. Prosecutors Gleason and Roslund

The Complaint avers that Assistant State's Attorneys Gleason and Roslund committed a

variety of common law and constitutional torts against Bahreini when they investigated and

prosecuted him for criminal theft. *See* ECF No. 1 ¶¶ 25–42. From this, Roslund and Gleason

contend that they enjoy prosecutorial immunity from suit. ECF No. 19-1 at 5–7. Prosecutorial

immunity "protects 'the vigorous and fearless performance of the prosecutor's duty' that is so

essential to a fair, impartial criminal justice system." *Nero v. Mosby*, 890 F.3d 106, 117 (4th Cir.

2018) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976)). Although this immunity

shields prosecutors from suits so that they may make charging decisions free of concern about

future liability, *Nero*, 890 F.3d at 117, this protection is not limitless.

For example, this immunity is limited to the performance of prosecutorial functions, as

opposed to investigative or administrative ones. *See Imbler*, 424 U.S. at 422–23; *see also Kalina

v. Fletcher*, 522 U.S. 118, 127 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Nero*,

890 F.3d at 118. Where a prosecutor's complained-of conduct is closely associated with judicial

process, she is immune from suit. *See Burns v. Reed*, 500 U.S. 478, 479 (1991); *see also Nero*,

890 F.3d at 118 (quoting *Imbler*, 424 U.S. at 430)). But the same protection does not extend to

purely investigative functions akin to those performed by police officers. *Kalina*, 522 U.S. at

126.

Immunity is also limited by the individual rights afforded to the accused pursuant to the

United States Constitution. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). One such

"constitutional constraint" is imposed by the Due Process Clause of the Fifth Amendment. *See

id.* Relevant here, a prosecutor is not immune from future civil suit when he or she bases his

decision to prosecute "on 'an unjustifiable standard such as race, religion or other arbitrary classification.'"  *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).  Thus, where a plaintiff can make plausible a selective prosecution claim—that he was prosecuted because of his race where other "similarly situated individuals of a different race were not prosecuted" and that the decision to prosecute was "invidious" or made in bad faith, *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (citations omitted)—then the prosecutor cannot claim such immunity from suit.  *See Franklin v. Office of Baltimore Cty State's Attorney*, No. WDQ-14-2356, 2015 WL 799416, at \*4 (D. Md. Feb. 24, 2015).

      With these principles in mind, it is plain that all claims concern Roslund and Gleason's standard prosecutorial functions.  The Complaint alleges that the prosecutors charged Bahreini "without probable cause;" that they "accepted select information as the whole truth" supporting prosecution; and that they contravened office policy to "allow ongoing civil disputes to resolve issues of financial liability" before bringing criminal charges.  ECF No. 1 ¶¶ 24(3), 24(11), 27. These allegations take aim at routine prosecutorial decisions: what evidence to credit, what charges to pursue, and what case to present at trial.  *See Nero*, 890 F.3d at 118 (state's attorney immune from suit where she allegedly filed "false charges" against the accused "without probable cause" and "omitted key facts" in the applications for charges); *Lyles v. Sparks*, 79 F.3d 372, 376–77 (4th Cir. 1996); *see also Imbler*, 424 U.S. at 424.  Accordingly, to the extent the claims all stem from decisions that Roslund and Gleason made as prosecutors, they enjoy immunity from suit as to Counts I–V.

      In fairness to Bahreini, Counts I and II seem to allege that Gleason and Roslund selectively prosecuted Bahreini because he is brown skinned.  *See* ECF No. 1 ¶¶ 31, 24(2), 24(5), 28.  To the extent Bahreini brings a selective prosecution claim, Roslund and Gleason do

not enjoy the protection of prosecutorial immunity.  *See Armstrong*, 517 U.S. at 464.

Nonetheless, the selective prosecution claim fails for a different reason:  it is implausible as

pleaded.  *See Iqbal*, 556 U.S. at 678.  Viewing the Complaint facts most favorably to Bahreini,

nothing supports that Gleason and Roslund's decision to charge Bahreini was part of a larger

systemic campaign to pursue brown skinned criminal offenders while ignoring similarly situated

white ones.  *See Olvis*, 97 F.3d at 743.  Nor do the Complaint facts allow the inference that the

decision to prosecute Bahreini was racially motivated and pursued in bad faith.  *See id.*  That

Bahreini is brown skinned and was acquitted at trial alone does not make plausible a selective

prosecution claim.  *See id.*  Thus, this liability theory fails as a matter of law.

### B.  Investigator Neal

As for Investigator Neal, the analysis is slightly different.  Neal does not enjoy immunity

for investigative functions such as those "normally performed by a detective or police officer,"

which are not functionally aligned with the judicial proceeding.  *Kalina*, 522 U.S. at 126.

However, a prosecutor's decision to seek charges may break the causal chain between the

alleged misconduct of an investigator and the constitutional injuries arising from the charging

decision itself.  *English v. Clarke*, 90 F.4th 636, 648 (4th Cir. 2024); *Evans v. Chalmers*, 703

F.3d 636, 647 (4th Cir. 2012).  Thus, absent some facts that make plausible the investigator

contributed to the intervening charges—such as misleading the prosecutor, failing to disclose

exculpatory evidence, or unduly pressuring the prosecutor to seek an indictment—the

investigator cannot be held liable for malicious or selective prosecution.  *Evans*, 703 F.3d at

647–48; *see English*, 90 F.4th at 648.

When viewing the Complaint facts most favorably to Bahreini, Neal's potential liability

stems from her selective focus on only certain evidence.  *See* ECF No. 1 ¶¶ 24(3), 24(11).  Neal

reviewed emails and credit card receipts and then, according to Bahreini, focused only on the evidence that tended to show his guilt, not his innocence. *See id.* The Complaint also asserts baldly that Neal "knowingly, intentionally, with malice, and/or gross negligence" ignored exculpatory evidence. *Id.* ¶ 24(3). But no facts make such an inference plausible. At best, the Complaint makes clear that Neal credited certain evidence more than other evidence, which often happens in criminal prosecutions. *See id.* But nothing in the Complaint explains *how* her focus on evidence which, in her view, demonstrated Bahreini's guilt gives rise to an unconstitutional manipulation of the prosecution sufficient to state a claim. *See Evans*, 703 F.3d at 647–48.

Likewise, the Complaint accuses Neal of "never addressing" Bahreini's "evidence" and instead, proceeding with the investigation based on Zsebedics' and Sivick's version of events. ECF No. 1 ¶ 24(11). But again, the Complaint provides no facts that the evidence Bahreini supplied had been relevant, material, and exculpatory. *See Evans*, 703 F.3d at 647–48. Merely saying the evidence was favorable does not make it so. Thus, without more, the Complaint fails to make plausible that Neal's investigation contributed to any alleged unconstitutional prosecution.

Additionally, as to the state constitutional and common law claims, Neal enjoys statutory immunity pursuant to the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., Cts & Jud. Proc. § 5-522(b) & Md. Code Ann., State Gov't, § 12-105. A state employee is immune from prosecution for such torts arising from an employee's acts performed "within the scope of employment and without malice or gross negligence." *Lee v. Cline*, 384 Md. 245, 261 (2004). Malice is "characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud . . . ." *Lee*, 384 Md. at 268 (internal quotations omitted) (quoting *Shoemaker v. Smith*, 353 Md. 143, 163 (1999)). Gross negligence is defined as "an intentional

failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another . . . ." *Barbre v. Pope*, 402 Md. 157, 187 (2007) (citing *Boyer v. State*, 323 Md. 558, 578–79 (1991) (holding conclusory allegations of gross negligence are not sufficient to bring the claim outside of the immunity provisions of the MTCA)).

As an investigator for the State's Attorney's Office, Neal is indisputably a state employee. *See* ECF No. 1 at 1. Thus, she is immune from suit unless the Complaint pleads that she acted with gross negligence or malice. *See* Md. Code Ann., Cts & Jud. Proc. § 5-522(b) & Md. Code Ann., State Gov't, § 12-105. On this front, the Complaint generally asserts that the "investigation leading up to the charges was riddled with malicious, knowing, and intentional misconduct." ECF No. 1 ¶ 24. But as discussed, no facts nudge this conclusory allegation from the possible to the plausible. *See Iqbal*, 556 U.S. at 678; *Barbre*, 402 Md. at 182–89. Accordingly, Neal enjoys statutory immunity pursuant to the MTCA. *See* Md. Code Ann., Cts & Jud. Proc. § 5-522(b) & Md. Code Ann., State Gov't, § 12-105. The claims are dismissed as to her.

### C.    The State's Attorney's Office

As to the last of the State Defendants, the State's Attorney's Office, the Complaint makes a single reference to suing the Office for state and federal due process violations (Count II). ECF No. 1 ¶¶ 32–31. However, the State's Attorney's Office is a legal entity not subject to suit. *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 393–95 (4th Cir. 2014) (citing *Boyer*, 323 Md. at 572). "[A]bsent a statutory or constitutional provision creating a government agency, an 'office' or 'department' bears no unique legal identity, and thus, it cannot be sued under Maryland law." *Id.* The motion to dismiss the State's Attorney's Office from this suit is granted.

The Court next turns to Zsebedics' and Sivick's motions to dismiss.

**D.  Zsebedics and Sivick**

Bahreini sues Zsebedics and Sivick for defamation and gross negligence (Counts III–V) based on their participation as witnesses in his criminal prosecution.  ECF No. 1 ¶¶ 32–42. Turning first to the defamation-based claims (libel, slander, false light), Zsebedics and Sivick principally contend the claims are time barred.  ECF Nos. 15-1 & 16-1 at 4.

The defense of limitations is an affirmative one and often reserved for the factfinder. *Goodman v. Praxair*, 494 F.3d 458, 464 (4th Cir. 2007).  However, where "all facts necessary to the affirmative defense clearly appear on the face of the complaint" as construed most favorably to the plaintiff, the Court may grant dismissal on limitations grounds.  *Id.* (internal quotations and alterations omitted) (citing *Richmond, Fredericksburg, & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).  In Maryland, defamation claims must be brought within one year from the date on which the claim accrues.  *McClure v. Lovelace*, 214 Md. App. 716, 741–42 (2013), *aff'd sub nom. Amalgamated Transit Union v. Lovelace*, 441 Md. 560, 109 (2015); Md. Code, Cts. & Jud. Proc., § 5-105.  A defamation claim accrues "either on the day of publication, or, under the discovery rule, 'when the [plaintiff] in fact knew or reasonably should have known' of the statement." *McClure*, 214 Md. App. at 741–42 (quoting *Poffenberger v. Risser*, 290 Md. 631, 636 (1981)).

Although the Complaint does not specify which allegedly false statements support the claims, the Court considers all public statements that Zsebedics and Sivick made in connection with the criminal trial.  *See, e.g.*, ECF No. 1 ¶¶ 22, 24(3), 27.  Bahreini filed suit on May 22, 2023.  ECF No. 1.  Before that, Bahreini had been intimately involved in the investigation and prosecution of his criminal matter.  *See id.* ¶¶ 22, 23, 24(2), 24(7), 24(11).  Thus, any public

statements that Defendants uttered before May 22, 2022, about the subject of the criminal matter had accrued beyond the one-year limitations period.  *See McClure*, 214 Md. App. at 741–42.  As to those statements, the defamation allegations are dismissed on limitations grounds alone.

However, any statements that Zsebedics and Sivick made at the criminal trial do fall within the one-year limitations period, and so, are not time barred.  *See id.*  But those statements are not actionable regardless.  For testimony in a criminal proceeding, the witness enjoys absolute immunity from a future defamation claim, "even if [the witness'] motives were malicious, or [he] knew the statement was false, or the conduct was otherwise unreasonable." *Imperial v. Drapeau*, 351 Md. 38, 44 (1998) (stating that "[a]bsolute privilege . . . evolved from the common law rule under which a person is fully protected from any threat of potential liability in defamation for testimony given as a witness in a judicial proceeding"); *Adams v. Peck*, 288 Md. 1, 3 (1980).  Notably, Bahreini does not dispute this point.  *See* ECF No. 20 at 4.  Thus, the defamation claims cannot proceed based only on the statements uttered at trial.  *See Imperial*, 351 Md. at 44.  These claims (Counts III and IV) are dismissed as to Zsebedics and Sivick.

Likewise, the "gross negligence" claim (Count V) focuses on Defendants' participation in the criminal prosecution under the umbrella of "gross negligence."  *See* ECF No. 1 ¶¶ 40–42.[3] As to this claim, the parties focus their argument on whether the privilege against suit for defamation claims arising from trial testimony, *see Imperial*, 351 Md. at 44, can extend to common law gross negligence claims.  ECF Nos. 15-1 & 16-1 at 4; ECF No. 20 at 4–5.

---

[3] The guts of the gross negligence claim reads: "By making the made [sic] the false, defamatory statements to third persons regarding Bahreini he committed criminal acts, all Defendants intentionally, maliciously, recklessly and/or with reckless disregard, in part, so as to engage an unlawful race-based selective prosecution for over five years, ending in an unsuccessful five day jury trial so that it is beyond doubt, and clear and convincing, Zsebedics and Sivick weaponized the SAO to pursue a groundless criminal prosecution, in violation of openly known SAO policies against running a criminal prosecution for alleged economic crimes which are the subject of the Florida Lawsuit so as to gain advantage in the Florida Lawsuit by casting him in the false light of being a criminal."  ECF No. 1 ¶ 41.

Zsebedics and Sivick point this Court to no legal principle or other authority which permits dismissal based on the same privilege theory animating defamation cases. *See* ECF Nos. 15-1 & 16-1. Nonetheless, the claim fails on sufficiency grounds.

Fundamentally, negligence is the breach of some duty that one person owes to another. *Jones v. State*, 425 Md 1, 19 (2012). When a defendant breaches such duty and the breach proximately causes plaintiff's injury, a negligence claim may proceed. *See e.g.*, *Chicago Title Ins. Co. v. Allfirst Bank*, 394 Md. 270, 290 (2006). But "where there is no duty, there is no negligence." *Johnson v. PNC Bank, N.A.*, No. ELH-19-3136, 2020 WL 1491355, at *4 (D. Md. Mar. 27, 2020) (citing *Jones v. State*, 425 Md. 1, 19 (2012)). In claims of *gross* negligence, the duty alleged must be "*manifest.*" *Barbre*, 402 Md. at 187 (emphasis added).

"Duty," broadly defined, amounts to some "obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Muthukumarana v. Montgomery Cnty.*, 370 Md. 447, 487 (2002) (internal quotations omitted) (quoting *Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 627 (1986)). The Court knows of no such duty of care owed to a criminal accused from a victim or witness. Indeed, the Maryland Court of Special Appeals has expressly declined to find that a witness in a criminal prosecution owed any duty to the accused arising from the witness's purported misidentification. *Nolton v. Brejon, Inc.*, No. 0981, 2016 WL 4261743, at *7 (Md. Ct. Spec. App. Aug. 11, 2016) (holding trial court did not err in granting summary judgment in favor of defendant because no cases support that witness who positively identifies alleged criminal owes a duty to the alleged criminal); *see also Johnson*, 2020 WL 1491355, at *6–7 (following *Nolton).* Nor does the Complaint aver any facts giving rise to any such duty, much less one that is "manifest." *See*

*Barbre*, 402 Md. at 187; ECF No. 1 ¶ 22.  Because the claim as pleaded fails as a matter of law, it must be dismissed as to Zsebedics and Sivick.

### III.    Dismissal With or Without Prejudice

The Court next turns to whether the claims in the Complaint should be dismissed with or without prejudice.  *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013). Generally, when a plaintiff has not been afforded an opportunity to amend the complaint, dismissal should be without prejudice.  *See Glover v. Loan Science, LLC*, No. 8:19-01880-PWG, 2020 WL 3960623, at *3 (D. Md. July 13, 2020) (citing *Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013)).  However, when the claims suffer from legal defects which render them unamendable, dismissal with prejudice is warranted.  *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

First, regarding claims shielded by immunity, all counts against Gleason and Roslund arising from their role as prosecutors are dismissed with prejudice.  *See Imbler*, 424 U.S. at 422–23.  The claim brought against the State's Attorney's Office is also dismissed with prejudice because the Office is an entity not capable of being sued.  *See Owens*, 767 F.3d at 393–95.  Last, to the defamation claims (Counts III and IV) against Zsebedics and Sivick, because any alleged public statements uttered before the criminal trial are time-barred, and any statements uttered at trial are shielded by privilege, they too are dismissed with prejudice.  *See* Md. Code, Cts. & Jud. Proc., § 5-105; *Imperial*, 351 Md. at 44.

To the extent aspects of the remaining claims have been dismissed on sufficiency grounds—such as the claims against Neal, the selective prosecution claim against the prosecutors or the gross negligence count against Zsebedics and Sivick—the Court dismisses those claims with prejudice as well.  The motions to dismiss underscored the factual deficiencies of these

claims.  *See, e.g.*, ECF No. 19-1 at 9–11; ECF Nos. 15-1 & 16-1 at 5.  And yet, Bahreini failed to cure any of the pleading defects in his subsequent motion to amend the Complaint.  *See* ECF No. 23-1.  The Court sees no reason to grant Bahreini further leave to amend the Complaint when he made short shrift of his prior opportunity.  All claims are dismissed with prejudice.

## IV.    Motion for Leave to File Amended Complaint

As to Bahreini's motion to amend the Complaint to add an "abuse of process" claim against Defendants Zsebedics and Sivick, the Court denies amendment because the proposed claim fails as a matter of law.  Federal Rule of Civil Procedure 15(a) directs that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  But where the proposed amendment does not state a legally cognizable claim, then amendment is futile and may be denied.  *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

To plausibly aver an abuse-of-process claim, the plaintiff must allege some facts that show a defendant (1) willfully used "process," such as pursuing criminal charges, "in a manner not contemplated by law"; (2) "to satisfy an ulterior motive"; and that (3) "damages resulted from the [] perverted use of process."  *Wallace v. Mercantile Cnty. Bank*, 514 F. Supp. 2d 776, 792–93 (D. Md. 2007), *aff'd*, 307 F. App'x 720 (4th Cir. 2009).  Accordingly, the crux of the claim is not simply commencing an action that turns out to be misguided or ill-advised.  Rather the claim may proceed where the defendant accomplishes an end "other than that which [the judicial process] was designed to accomplish."  *Metro Media Ent., LLC v. Steinruck*, 912 F. Supp. 2d 344, 350 (D. Md. 2012) (quoting *Wood v. Palmer Ford, Inc.*, 47 Md. App. 692, 705 (1981) (citation omitted)).  So, where the defendant pursues criminal charges to achieve a goal unrelated to the criminal prosecution, such as extorting the accused once charges have been filed, the defendant may be liable for abuse of process.  *See id.* (quoting *Palmer Ford, Inc. v. Wood*,

298 Md. 484, 512 (1984)).  But the claim cannot not lie where "the defendant has done no more than carry out the process to its authorized conclusion, even though with bad intentions." *Berman v. Karvounis*, 308 Md. 259, 265 (1987) (quoting W. Prosser, *Handbook of the Law of Torts* § 121 (4th ed. 1971)).

The proposed amended claim fails because no facts make plausible that Zsebedics and Sivick pursued criminal charges "in a manner not contemplated by law."  *See Wallace*, 514 F. Supp. 2d at 792–93.  The proposed amended claim accuses the two former partners of causing Bahreini to undergo "a disastrous 5 day jury trial," based on supposed "false and fraudulent allegations," all for the purpose of "gaining advantage" in the "Florida Lawsuit."  ECF No. 23-1 ¶ 45.  Construing the alleged facts most favorably to Bahreini, at best, the proposed claim reflects that the criminal matter commenced after, and ran parallel to, the civil suit.  *See id.*  From, this, Bahreini urges the Court to draw the inference that Zsebedics and Sivick pursued the criminal charges to somehow gain advantage in the civil case.  *See id.*  But the amended complaint offers no facts to make that inference plausible.  *See Iqbal*, 556 U.S. at 678.  Merely because the civil and criminal cases ran together does not give rise to an abuse of process claim. *See Berman*, 308 Md. at 265; *see also* ECF No. 23-1 ¶ 23 (prosecutors repeated assurances that the criminal prosecution "had nothing to do" with the civil case).  Thus, the proposed claim fails, and because amendment is futile, the motion will be denied.

## V.    Conclusion

Based on the foregoing, Defendants' motions to dismiss are granted and Bahreini's motion for leave to amend the Complaint is denied.  A separate Order follows.

February 20, 2024                                    /s/
Date                                                Paula Xinis

16

United States District Judge